IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

JAMES LESTER,                        )
                                     )
        Plaintiff,                   )
                                     )
vs.                                  )      No. 10-cv-02138-JPM-dkv
                                     )
LOGAN'S ROADHOUSE, INC.,             )
                                     )
        Defendant.                   )

---

REPORT AND RECOMMENDATION ON THE DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

---

The plaintiff, James Lester ("Lester"), proceeding *pro se*,
filed a complaint on February 25, 2010, alleging that the
defendant, Logan's Roadhouse, Inc. ("Logan's"), violated the Age
Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.
§§ 621 *et seq.*,[1] by discriminating against him on the basis of
age. (*Pro Se* Compl., D.E. 1.)    On March 24, 2010, the court
issued an order granting Lester leave to proceed *in forma
pauperis*, (D.E. 2), and subsequently referred the case to the
*pro se* staff attorney for screening.    This case has now been
referred to the United States Magistrate Judge for management

---

[1]     Lester used the court-provided form "Complaint under Title
VII of the Civil Rights Act of 1964"; however, Title VII does
not provide a cause of action for age discrimination.    The court
therefore will treat Lester's complaint as alleging a claim for
wrongful termination based on his age in violation of the ADEA.

and for all pretrial matters for determination and/or report and recommendation as appropriate. (Order of Referral, D.E. 46.)

Before the court is the August 30, 2013 motion for summary judgment filed by Logan's. (Def.'s Mot. for Summ. J., D.E. 60.) Lester filed a response to the motion (*Pro Se* Resp. to Def.'s Mot. for Summ. J., D.E. 61), and Logan's filed a reply (Def.'s Reply, D.E. 62). For the reasons set forth below, it is recommended that Logan's motion for summary judgment be granted and that Lester's complaint be dismissed in full.

## I.   PROPOSED FINDINGS OF FACTS

Under Rule 56(c)(1) of the Federal Rules of Civil Procedure, when moving for summary judgment, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). In response to the motion, if a party

> fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;

> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

FED. R. CIV. P. 56(c)(3).

Lester's response to Logan's motion for summary judgment fails to properly address Logan's assertions of undisputed facts. Specifically, Lester has not complied with Local Rule 56.1(b), which provides that the opponent of a motion for summary judgment "must respond to each fact set forth by the movant" and "the response must be made on the document provided by the movant or another document in which the [opponent] has reproduced the facts and citations verbatim as set forth by the movant." Either way, according to the Local Rule, "the [opponent] must make [its] response to each fact set forth by the movant immediately below each fact set forth by the movant." Lester has failed to do so. In addition, Lester has not demonstrated that any of Logan's facts are genuinely disputed by citing to the record or affidavits or deposition testimony or admissible testimony. The court, therefore, considers the proposed factual findings of Logan's to be undisputed to the

extent they are properly supported by evidence in the record. FED. R. CIV. P. 56(e)(3).

The following facts are undisputed for purposes of this summary judgment motion:

James Lester worked for Logan's Roadhouse, Restaurant #317, in Memphis, Tennessee from July of 1997 until March of 2009. On March 10, 2009, Lester verbally threatened a co-worker, Frank Loyd ("Loyd"), in the presence of two managers, Kitchen Manager Lamonte Greer ("Greer") and Assistant Manager Angela Parker ("Parker"). The incident occurred when Lester and Loyd were pulled aside for a counseling session after the two had been arguing throughout the day. During the session and after Lester's threats, Greer asked Lester to clock out and leave the restaurant; however, Lester returned to Logan's several hours later that evening. Based on the altercation, Greer submitted an incident report to Regional Manager David Rodriguez ("Rodriguez"). Rodriguez directed Parker and Greer to collect witness statements and to document their own accounts of the March, 10, 2009 incident and Lester's return to the restaurant later that evening, which Rodriguez reviewed.

The statements of Greer, Parker, and Loyd provide a narrative of Lester's conduct on March 10, 2009. According to Greer, he witnessed Lester threaten Loyd and heard him say that Loyd was a "Dick Sucker That Frank was nothing but a shit

starter and he was going to finish it. [Lester] said people get killed every day on the job, and it might carry over to other people." Parker likewise witnessed Lester threaten Loyd and wrote that she heard Lester reference "the SCHNUCK'S incident (stabbing of 11 people, by disgruntled employee)" and state, "[d]on't make me go Schnuck's in here." She wrote that Lester "called Frank out of his name several times and made reference to his dead father." When Parker told Lester and Loyd they needed to work together because they could not afford to lose a job in this economy, she wrote that Lester stated, "this is beyond losing jobs, we're talking about losing lives."

In her report, Parker also wrote about Lester's return to Logan's later in the evening of March 10, 2009. According to Parker, Loyd approached Parker at the end of his shift to leave for the evening, asking Parker to escort him to his car "because he was worried Lester might come back." Parker "told [Loyd] to give [her] a minute and [she] would, ([the restaurant was] slammed). Some minutes later [Parker got] a phone call, its Frank. He tells [Parker] that Lester was outside in his moms Mercedes Benz. [Lester] had blocked Frank in, then he drove away." Though Parker did not see Lester when she ran to the parking lot because he had already left, she stated that a guest of the restaurant confirmed "that he saw a Mercedez Benz block in Franks vehicle then speed out of parking lot."

5

Loyd's report also contained an account of March 10, 2009. He wrote that Lester told him he "should be dead like [his] father and be careful when [he] go[es] outside. [Lester] went on to say that what happen at Schnuck it could happen here." Loyd wrote that Lester said to him that he "would die tonight and be with [his] Dad in heaven and to watch [his] back." As to Lester's return that evening, Loyd wrote in his report that "[w]hen [he] got off work [Lester] had come back up here and threat me again. I had ask [Parker] to walk out to my car by the time she had come out he had pull off."

Based on this investigation, Rodriguez found the accounts of Greer, Parker, and Loyd to be credible; he believed that Lester had threatened to kill or seriously injure Loyd and had returned to the restaurant that evening to attempt to carry out his threats. Logan's has a policy that strictly prohibits threatening, fighting, provoking a fight with a fellow team member, threatening acts of violence, or making verbal threats. These types of conduct are punishable by disciplinary action up to and including discharge. Because Rodriguez believed that Lester's behavior on March 10, 2009 violated Logan's policy, he and Employee Relations Manager Charlotte Brearly decided to terminate Lester's employment.

On March 20, 2009, Lester wrote a letter to Logan's Senior Director of Human Resources Christy Cox seeking to appeal his

termination and instead receive three days of suspension. In his letter, Lester admitted to threatening Loyd and to returning to the Logan's parking lot later that evening. He explained that he was joking, but the decision to terminate Lester was not overturned.

Thereafter, Lester filed a charge with the EEOC, alleging that, in discharging him, Logan's discriminated against him based on his age. During his deposition, Lester testified that his date of birth is July 26, 1960, making him 48-years-old at the time of his termination in March of 2009. (Lester Dep., D.E. 60 Ex. 1, 154:12.) On December 2, 2009,[2] the EEOC issued a right to sue letter, and Lester thereafter filed his complaint on February 25, 2010.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376,

---

[2]    In the court's Order Denying Defendant's Motion to Dismiss, the presiding judge, Chief Judge Jon P. McCalla, noted that Lester failed to provide his right to sue letter to indicate the date of its issuance. (D.E. 26 at 4.)    However, Lester represented to the court that it was issued on December 2, 2009, and thus, the court ruled that Lester timely filed his complaint on February 25, 2010. (*Id.*)

378 (6th Cir. 1993); *Osborn v. Ashland Cnty. Bd. of Alcohol, Drug Addiction & Mental Health Servs.*, 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam).  The moving party has the burden of showing that there are no genuine issues of material fact at issue in the case.  *LaPointe*, 8 F.3d at 378.  This may be accomplished by pointing out to the court that the non-moving party lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

In response, the non-moving party must go beyond the pleadings and present significant probative evidence to demonstrate that there is more than "some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993); *see also LaPointe*, 8 F.3d at 378.  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247—48 (1986); *LaPointe*, 8 F.3d at 378.

In deciding a motion for summary judgment, the "[c]ourt must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"

*Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993)(quoting *Anderson*, 477 U.S. at 251—52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Patton*, 8 F.3d at 346; *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). However, to defeat a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *LaPointe*, 8 F.3d at 378. Finally, a court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Anderson*, 477 U.S. at 255; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

B.  Evidentiary Framework for Evaluating Age Discrimination
    Claims

Lester alleges that Logan's unlawfully discriminated against him on the basis of his age when the company terminated his employment in March of 2009. (Am. Compl., D.E. 5 ¶ 9.) The Age Discrimination in Employment Act ("ADEA") prohibits an employer from discriminating "against any individual with respect to his terms of compensation, terms, conditions, or

privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In ADEA claims, the plaintiff bears the burden of persuasion to show that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). The plaintiff may carry this burden by either direct or circumstantial evidence. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Where, as here, the plaintiff presents no direct evidence of age discrimination, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) applies. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of age discrimination. *McDonnell,* 411 U.S. at 802. If the plaintiff succeeds, the defendant must "articulate some legitimate, nondiscriminatory reason" for the termination. *Id.* "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003).

1. *Lester's Failure to Establish a Prima Facie Age Discrimination Case*

To establish a *prima facie* case of age discrimination under the ADEA absent direct evidence of discrimination, a plaintiff

10

must establish: (1) he was a member of the protected class, meaning he was at least 40 years old; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a substantially younger individual. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008)(citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007); *Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 456 (6th Cir. 2007); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 222, 459-60 (6th Cir. 2004); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982). A plaintiff may also satisfy the fourth prong of a *prima facie* showing by adducing evidence that he "was treated differently than similarly situated non-protected employees." *Mitchell*, 964 F.2d at 583); *see also Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008)(race discrimination case)(citing *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)(race and sex discrimination claim).

Logan's does not dispute that Lester can establish the first three elements of a *prima facie* case of age discrimination. Indeed, Lester was over the age of forty at the time of his termination, he was terminated from employment, and he was otherwise qualified for the position he had held since 1997. Rather, Logan argues that Lester cannot establish the

fourth element — that he was treated differently than similarly situated non-protected employees.

Throughout Lester's pleadings, Lester cites only Loyd as a similarly situated non-protected employee. Lester states in his complaint:

> Employer is aware that the fellow employee . . . has had issues with 12 other employees including a written complaint . . . . There was (sic) several harassment complaints filed against him from female employees which caused him to be fired from management and rehired as a mere cook. . . . I have also witnessed him smack my kitchen manager Mr. Greer with no avail.

(D.E. 5 at ¶ 10.) Additionally, Lester testified in his deposition that Loyd was not terminated after allegedly threatening a co-worker, Belinda Cox ("Belinda"), such that she "was terrified of her life and had to call the Memphis Police Department." (Lester Dep., D.E. 60, Ex. 1, 162:20-25.) He also testified to various other encounters he had with Loyd where Loyd flinched a knife at him from another room, bumped into other's shoulders, stepped on his toes, poured ice down another co-worker's pants, and called him old. (*Id.* 28:16-17, 36:1-25, 65:7-17.)

Logan's denies that Loyd is a similarly situated non-protected employee because Loyd is a member of the protected class. Therefore, Logan's argues that Loyd is not a proper comparator. Loyd's personnel records indicate his date of birth is September 15, 1969. (Cox Decl., D.E. 60, Ex. 5 ¶ 8.) The

incident that most similarly resembles Lester's threatening of Loyd that resulted in Lester's termination was Loyd's alleged threatening of Belinda Cox. According to Rodriguez's declaration, the threat was reported in June of 2010. (Rodriguez Decl., D.E. 60, Ex. ¶ 13.) At the time, Loyd was forty-years-old and was a member of the same age-protected class as Lester. Thus, any disparate treatment Loyd allegedly received by not being terminated could not be the result of age discrimination. *See Sperber v. Nicholson*, 342 F. App'x 131, 132 (6th Cir. 2009)("[The plaintiff] failed to offer evidence that similarly situated non-protected individuals were treated differently. The similarly situated employees that he proffered were older than 40 at the time of their respective demotions and were therefore members of the protected class.").

Even if Loyd had been a member of the non-protected class of employees under age forty, Logan's contends that Loyd was not similarly situated because he did not engage in conduct of comparable seriousness. "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)(emphasis in original). In comparing himself to Loyd, Lester must show that

Loyd's acts of "insubordination were of 'comparable seriousness' to the conduct for which" Lester was terminated. *See id.*

Lester's conduct for which he was disciplined was more egregious and severe than the alleged misconduct of Loyd. Plus, Lester lacks admissible evidence of misconduct on the part of Loyd that rises to the same level of severity as Lester's conduct. Lester threatened workplace violence and the life of Loyd. Two managers witnessed Lester's incident, corroborating each other's accounts that Lester threatened Loyd's life. Lester's accusations concerning Loyd's behavior in the workplace — stepping on toes, bumping shoulders, pouring ice, and calling Lester old — do not rise to the same level of seriousness as threats against a co-worker's life.

Lester's allegations that Loyd threatened Belinda's life, prompting her to call the police, is not supported by admissible evidence. (Lester Dep., D.E. 60, Ex. 1, 183:1-25.) Lester does not have personal knowledge of Belinda and Loyd's alleged altercation; Lester explained that he received this information from Belinda Cox and from a police report she filed. (*Id.*) Thus, his account of the incident is inadmissible. Nor does Lester offer the sworn statement of any witnesses to the alleged threatening of Belinda by Loyd or an affidavit of someone with personal knowledge of the event. The police report Lester attaches as an exhibit likewise contains no witness to Loyd's

alleged threatening of Belinda. (*See* D.E. 61-1, Ex. 5.6) It appears from the report that Belinda reported that Loyd threatened "to do body harm and also call[ed] . . . Belinda nasty names. . . . [Loyd] came into the meat cooler with her, closing the door and stat[ed] the situation was not over." (D.E. 61-1, Ex. 5.6.) "Belinda advised she got a restraining order" against Loyd. (*Id.*) A separate incident is also listed in the report, in which another employee, Deborah Brooks ("Brooks"), claims Loyd threw hot water on her. (*Id.*) In Lester's deposition, Lester claimed that someone he could not remember who was listed in the police report witnessed Loyd threaten Belinda. (Lester Dep., D.E. 60, Ex. 1, 183:1-25.) Brooks is the only other person referenced in the police report, but the police report does not state that Brooks witnessed Loyd threaten Belinda. (*See id.*) Logan's own internal investigation concluded that "no one could corroborate Ms. Cox's account, particularly no managers, and thus had insufficient evidence that Mr. Loyd had violated Logan's policies. Accordingly, [Logan's] did not discharge Mr. Loyd as a result of Ms. Cox's complaint." (Rodriguez Decl., D.E. 60, Ex. 2 ¶¶ 14-15.)

Logan's has also raised evidentiary objections on grounds of relevancy and hearsay to the material, including the police report, offered by Lester in response to Logan's motion for summary judgment. Lester attached thirty-one pages of documents

15

to his response to Logan's motion for summary judgment, including a letter from his psychotherapist who is treating him for bipolar disorder, his medical appointment notification, his prescription labels, his unsworn handwritten statements, an unsworn declaration from Anastasia B. Hodges dated April 30, 2013, an unsworn declaration from James Sanders dated May 1, 2013, an unsworn declaration of Theron Marion dated March 21, 2009, excerpts from this Tennessee Human Rights Commission claim, his requests for admissions which the court quashed as untimely, a copy of Logan's anti-harrassment policy signed by him, an October 10, 2000 disciplinary action received by Lester, docket records from the General Sessions Court of Shelby County Tennessee, and Memphis Police Department records. (D.E. 61-1.) Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

The court sustains these objections. The letter from his psychotherapist, his medical appointment notification, his prescription labels, his requests for admissions which the court quashed as untimely, a copy of Logan's anti-harassment policy which he signed, and the October 10, 2000 disciplinary action received by Lester are irrelevant and immaterial. Evidence which is not relevant is not admissible. FED. R. EVID. 402. The court therefore has disregarded these documents. In addition,

unsworn statements cannot be used to support or oppose a motion for summary judgment. *Pollock v. Pollock*, 154 F.3d 601, 611 n. 20 (6th Cir. 1998). The court therefore has disregarded the unsworn statements of Lester, Hodges, Sanders, and Marion. Logan's objects to the Memphis Police Department records and the General Sessions Court Clerk documents as hearsay. To the extent these documents contain hearsay, the court has disregarded them.

Thus, Logan's has sufficiently shown the court that Lester lacks evidence to support the fourth element of his *prima facie* case, *see Celotex*, 477 U.S. at 323, and Lester fails to present "significant probative evidence to demonstrate that there is more than 'some metaphysical doubt'" as to Lester and Loyd's differing circumstances, *see Moore*, 8 F.3d at 340. In sum, Lester has not put forth sufficient evidence to establish the fourth prong of his age discrimination case and therefore fails to make out a *prima facie* case of age discrimination. Accordingly, the court recommends that Logan's motion for summary judgment be granted.

2.  *Logan's Legitimate Non-Discriminatory Reason*

Assuming Lester were able to establish a *prima face* case of age discrimination, Logan's has articulated a legitimate, nondiscriminatory reason for Lester's termination. Based on two manager's witness accounts, Loyd's report, and Lester's own

17

admission that he threatened Loyd (but was "joking") and returned to the restaurant the same evening, Logan's management reasonably concluded that Lester violated Logan's policy against threatening, fighting, threatening acts of violence, or making verbal threats. According to Logan's employee handbook, violation of this policy is subject to disciplinary action up to and including discharge. (D.E. 60, Ex. 2, Tab 6.) Sixth Circuit case law likewise supports the notion that terminating an employee for threats of violence is a legitimate, nondiscriminatory reason for termination. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000); *see also Green v. Burton Rubber Processing, Inc.*, 30 F. App'x 466, 471 (6th Cir. 2002).

Even if Lester was joking and Logan's management was mistaken in their belief that Lester's threats were intended as serious, the court finds that Logan's had an "honestly held belief" that the lawful reason — Lester's threats of violence — supported the termination decision. *See Rutherford v. Britthaven, Inc.*, 452 F. App'x 667, 672-73 (6th Cir. 2011)("[W]e do not consider whether the alleged nondiscriminatory reason supporting the termination actually occurred, but whether the employer 'had an honestly held belief' that the lawful reason supporting the termination decision occurred. 'An employer has an honest belief in its reason for discharging an employee where

the employer reasonably relied on the particularized fact that were before it at the time the decision was made.'")(quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001))(internal quotation marks and citations omitted). Logan's has sufficiently shown a legitimate, nondiscriminatory reason for terminating Lester's employment. Therefore, the burden shifts back to Lester to show that Logan's proffered reason is pretext for age discrimination. *Sutherland*, 344 F.3d at 615.

3. *Lester Lacks Proof of Pretext*

A plaintiff can show pretext in three ways: (1) by showing that the proffered reasons have no basis in fact; (2) by proving the proffered reasons did not actually motivate the employer's action; or (3) by establishing that the proffered reasons were not sufficient to motivate the employer's action. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2006). To carry his burden for purposes of summary judgment, Lester must produce "sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why it fired h[im]." *Id.*

Lester claims that his termination was motivated by age but offers no evidence to dispute Logan's reason for firing him. At different times, Lester has admitted and denied the facts on which his termination was based, admitting to threatening Loyd in his letter to Christy Cox and in his deposition but denying

it in his response to Logan's motion for summary judgment. Regardless, Lester fails to produce any evidence that Logan's proffered reasons have no basis in fact. He likewise fails to produce any evidence of an alternative motivation for terminating him or the insufficiency of Logan's proffered reasons in terminating him. The only evidence Lester presents in regards to age is that Loyd called him old on one or several occasions; however, Lester does not demonstrate how the comment of one co-worker on a separate occasion tends to prove that Logan's terminated Lester on the basis of age, rather than his threats of violence. Because there is simply no evidence of Logan's discriminatory bias, the court recommends that summary judgment be granted.

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that Logan's motion for summary judgment be granted and that Lester's complaint be dismissed in full.

Respectfully submitted this 5th day of November, 2013.

S/ Diane K. Vescovo_____
Diane K. Vescovo
United States Magistrate Judge

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and

file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.